No. 01-434

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 164

IN THE MATTER OF THE ESTATE OF
LEO E. McDERMOTT, SR.,

        Deceased,

    and

IN THE MATTER OF THE ESTATE
AND GUARDIANSHIP OF
ALAN J. McDERMOTT, an incompetent
person.

APPEAL FROM:    District Court of the Third Judicial District,
                In and for the County of Anaconda-Deer Lodge,
                The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Alan F. Blakley, Blakley & Velk, Missoula, Montana

       For Respondents:

           D. Patrick McKittrick, McKittrick Law Firm, Great Falls, Montana

Submitted on Briefs:  December 13, 2001

Decided:  July 25, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Appellant Leo E. McDermott Jr. appeals from an order issued by the Third Judicial District Court, Anaconda-Deer Lodge County, which consolidated two causes of action, ordered proceedings from the sale of real estate be deposited into a guardianship account, and awarded attorney fees and costs to Respondents Patricia Raunig and Helen Ricci.  We affirm.

¶2    We address the following restated issues on appeal:

¶3    1.    Did the District Court err when it consolidated the probate and guardianship proceedings?

¶4    2.    Did the District Court err when it ruled that the 1973 transaction concerning Leo E. McDermott Sr.'s residence created a constructive trust for the benefit of Alan McDermott?

¶5    3.    Did the District Court err when it awarded attorney fees to Respondents Patricia Raunig and Helen Ricci?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6    Decedent Leo E. McDermott Sr. ("Senior") fathered six children, four of which are involved in this action: Alan McDermott ("Alan"); Appellant Leo E. McDermott Jr. ("Junior"); and Respondents Patricia Raunig and Helen Ricci.  In 1972, Alan sustained a serious brain injury as a result of a motorcycle accident.  Following the accident, Junior was appointed as Alan's legal guardian in December of 1972.  In December of 1973, Junior filed an annual accounting which valued Alan's estate at approximately $62,000.  However, Junior neglected to file another accounting until 1999.

2

¶7 From 1972 until 1998, Alan lived with his father at Senior's residence in Sunnyside Addition near Anaconda, Montana. In July of 1973, Senior executed a deed which conveyed the Sunnyside residence to Junior. Junior recorded this deed on February 25, 1975. In 1986, Junior purportedly executed a deed which conveyed the Sunnyside residence back to Senior. However, Junior vehemently disputes the validity of the alleged re-conveyance and contends that someone forged his signature on the 1986 deed.

¶8 In 1991, Senior executed a will which devised the Sunnyside residence, together with its contents and personal belongings, to Alan, Junior, Patricia, and Helen. Then, on September 23, 1992, Senior executed a deed to the Sunnyside residence which purportedly retained a life estate for himself and conveyed a future interest in the residence to Junior, Patricia, and Helen as joint tenants with right of survivorship.

¶9 On December 21, 1998, Senior died and Alan moved in with Patricia. On January 29, 1999, Patricia, appointed as personal representative of Senior's estate, filed a petition for informal probate of Senior's will in Cause Number DP-99-4. Shortly thereafter, Patricia and Helen learned that Junior had not filed an accounting on Alan's behalf since 1973. Therefore, in an action separate from DP-99-4, on February 24, 1999, Patricia and Helen requested that the District Court substitute them as Alan's co-guardians in the place of Junior. Patricia and Helen also requested that the District Court order Junior to file a

3

contemporaneous accounting of Alan's estate. On May 12, 1999, the District Court granted both of the requests in the guardianship action, Cause Number 5838.

¶10 On July 1, 1999, in the probate proceeding (DP-99-4), Patricia informed the District Court that the Sunnyside residence had been sold and moved the District Court to deposit the proceeds in an account monitored by the Court, pending resolution of Junior's obligations in the guardianship action. On July 6, 1999, the Court granted Patricia's motion, subject to Junior's obligations in Cause Number 5838. On September 23, 1999, Junior filed what the District Court described as a "woefully inadequate" accounting of Alan's estate in Cause Number 5838.

¶11 On November 15, 1999, Junior moved the District Court to release the proceeds of the residence's sale to him as he "held the real property in fee simple" pursuant to the terms of the 1973 conveyance. As the false signature on the 1986 deed "could not pass title even to a bona fide purchaser," Junior argued that Senior had no interest in the property to convey on September 23, 1992. Conversely, Patricia and Helen argued, in part, that "[w]hen [Senior] transferred the subject property to [Junior] in 1973, he did so for purposes of effectuating the Guardianship of Alan and to insure Alan had a home." While Patricia and Helen maintained that the subsequent conveyances were valid, they also argued that Senior conveyed the property to Junior for the benefit of Alan, thereby creating a constructive trust. Consequently, Patricia and Helen

4

argued that Junior would "be unjustly enriched if he were allowed to retain the property or receive the sale proceeds."

¶12  In the ensuing months, the parties filed several documents in both actions, including a motion for fees and costs in the guardianship action, and motions for sanctions in the probate action.  Finally, on November 28, 2000, the District Court issued its findings of fact, conclusions of law, and order in which it consolidated the two actions.  The District Court found that the 1973 transaction established a constructive trust for the benefit of Alan.  Therefore, the District Court ordered that all proceeds from the sale of the Sunnyside residence be deposited in the guardianship account for Alan.  Further, the District Court ordered Junior to pay eighty percent of Respondents' attorney fees and costs, and Junior's attorney to pay the remaining twenty percent of their fees and costs.  Junior appeals that portion of the District Court's order which consolidated the two actions, found that the 1973 transaction established a constructive trust, and awarded attorney fees.

## DISCUSSION

### ISSUE 1

¶13  **Did the District Court err when it consolidated the probate and guardianship proceedings?**

¶14  Consolidation rests in the discretion of the court and will not be overturned absent a clear abuse of discretion.  *Tribby v. Northwestern Bank of Great Falls* (1985), 217 Mont. 196, 208, 704 P.2d 409, 417.  To determine whether a district court abused its

5

discretion, we review the case to ascertain whether the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Moss*, 1999 MT 62, ¶ 15, 293 Mont. 500, ¶ 15, 977 P.2d 322, ¶ 15.

¶15 The record provides little indication as to the specific date whereon the District Court consolidated the probate and guardianship matters. As Junior points out, on January 26, 2000, in an order utilizing a consolidated caption, the District Court ordered that "the outstanding issues in the above-captioned case shall be submitted to Mediation . . . ." Then, on February 9, 2000, the District Court granted Respondents' motion to file discovery responses under an order which referred solely to the probate matter. Finally, on February 23, 2000, the District Court directed the parties to submit proposed findings of fact, conclusions of law, and supporting briefs in an order reverting back to the consolidated caption. While this inconsistent practice does create some confusion as to the initial status of the matters, the District Court, on November 28, 2000, found that "[t]he above two Causes are interrelated and therefore the Court will address both Causes within these Findings and Conclusions."

¶16 Junior argues that the two actions involve "clearly different parties" and contemplate entirely different legal and factual issues. Therefore, Junior urges us to remand the two causes for separate consideration as "[c]onsolidation of the two cases was clearly inappropriate." We disagree.

¶17   Rule 42(a), M.R.Civ.P., provides:

> **Consolidation.**   When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

¶18   We agree that the probate and guardianship proceedings did not contemplate similar issues at their inception.   The guardianship action simply sought a substitution of Alan's legal guardian and an accounting of Alan's estate.   On the other hand, the probate action sought to informally probate Senior's will.   At this point, the only similarity enjoyed by the separate actions was the parties involved, i.e., each cause pitted Respondents against Junior and concerned Alan in some fashion or another.

¶19   However, as the arguments developed in the probate action, it became apparent that a common bond conjoined the two proceedings. That common bond was the ownership interest in the proceeds from the sale of the Sunnyside residence.   In the probate action, the parties proffered evidence surrounding four alleged conveyances of the Sunnyside residence.   Each respective conveyance contemplated a unique composition of grantees.   At least two of the ownership theories implicated Alan's potential interest in the property. Therefore, the accounting and value of Alan's estate had a direct correlation to the District Court's determination regarding the Sunnyside residence.   As such, the two actions shared common questions of both law and fact.

¶20 Like most discretionary matters, one could probably fashion an argument supporting either perspective. However, the District Court determined that the collective interests would be better served by consolidating the matters. Despite this conclusion, Junior was given every opportunity to participate, and did in fact participate, in every proceeding irrespective of its origin. Consequently, Junior suffered no injustice at the hands of judicial economy. We hold that the District Court did not act arbitrarily or exceed the bounds of reason when it consolidated the two matters.

ISSUE 2

¶21 **Did the District Court err when it ruled that the 1973 transaction concerning Leo E. McDermott Sr.'s residence created a constructive trust for the benefit of Alan McDermott?**

¶22 The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs the appellate court to review and determine questions of fact as well as questions of law. *Gitto v. Gitto* (1989), 239 Mont. 47, 50, 778 P.2d 906, 908. We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Kovarik v. Kovarik*, 1998 MT 33, ¶ 20, 287 Mont. 350, ¶ 20, 954 P.2d 1147, ¶ 20. Further, we review a district court's conclusions of

law to determine whether they are correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶23 Junior argues that to impose a constructive trust, Respondents had to prove by clear and convincing evidence that Junior committed fraud or exerted undue influence over Senior in regard to the 1973 conveyance. While allegations of fraud have been raised regarding Junior's conduct in the ensuing years, Junior maintains that Respondents presented no evidence of the same in 1973. Consequently, Junior contends that Respondents failed to carry their burden of proof, and insists that the District Court erred in imposing a constructive trust over the proceeds from the sale of the Sunnyside residence.

¶24 Montana law recognizes two general categories of trusts, voluntary and involuntary. Involuntary trusts arise independently of any express contract and may be proven by parol evidence. *Gitto*, 239 Mont. at 50, 778 P.2d at 909. Within the category of involuntary trusts, two subclasses exist: resulting trusts and constructive trusts. Under § 72-20-111, MCA (repealed 1989), constructive trusts could arise upon a showing of fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts.

¶25 However, in 1989, the Legislature repealed § 72-20-111, MCA, and enacted the Trust Code, codified at Title 72, Chapters 33-36 of the Montana Code Annotated. Constructive trusts are now imposed pursuant to § 72-33-219, MCA, which provides:

> **Constructive Trust.** A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.

Thus, Montana law no longer requires a showing of fraud or other wrongful acts as a prerequisite to imposing a constructive trust pursuant to § 72-33-219, MCA.

¶26 Although a constructive trust may be imposed because the title holder obtained title by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, a constructive trust may also be imposed pursuant to § 72-33-219, MCA, in cases where a title holder innocently obtained title to property but would be unjustly enriched if he were allowed to retain the title.

*Moss*, ¶ 29. While the 1973 transaction in question clearly arose prior to the new statute's enactment, § 72-33-102(1), MCA, provides that "[a]fter September 30, 1989, chapters 33 through 36 apply to all trusts regardless of when they were created" unless the court believed such application would interfere with the rights of the parties and other interested persons.

¶27 As to the 1973 conveyance and subsequent ownership of the residence, the District Court entered the following findings:

> 4. [Senior] executed a deed for the family home to [Junior] in July 1973 with the intended result to be that Alan would have a place to live as is evidenced by:
>     a) [Junior's] comments in Exhibit 6 of the David McLean deposition which reflects, "I have arranged with Dad to keep our family home in Sunnyside for a home for Alan."
>     b) David McLean's deposition on page 63. [McLean testified that Senior stated, "Fine. I'm going to deed to you the house. Then, when I go you got a place to take care of Alan."]

10

c) the two affidavits of Norma Fitzgerald. [Stating: "The reason Leo McDermott Jr. was first deeded the property was to help take care of Alan McDermott as Leo Jr. was then guardian."]

. . . .

30. The record reflects that [Junior] has also communicated several inconsistencies and has communicated in a fraudulent manner regarding his purported ownership of the Sunnyside property, as is identified below:

. . . .

c). In the mid 1990's [sic] [Junior] filed bankruptcy. He did not list the Sunnyside home as one of his assets.
d). In 1991 [Junior] was divorced. He did not identify the Sunnyside home as one of his assets.
e). On deposition Exhibit 3, a loan application for a boat, [Junior] indicates that the Sunnyside home is owned by [Senior].
f). On page 14 lines 18 through 20 of his deposition [Junior] declares that he has never fraudulently made any legal documents.

31. In this case [Junior] argues that the Sunnyside home is his, yet in his divorce proceedings and in his bankruptcy proceedings he did not declare the Sunnyside home as being his. [Junior] is either attempting to commit a fraud upon this Court in this case or has committed fraud during the course of his bankruptcy proceedings and his divorce proceedings. Based upon the record herein, the Court believes that [Junior] is attempting to fraudulently acquire exclusive ownership of the Sunnyside property.

. . . .

33. [Junior] states that [Senior] gave him the house by the 1973 deed yet [Junior] has never paid any gift tax nor had [Junior] ever paid any property taxes on the house prior to [Senior's] death.

Based on the foregoing, the District Court concluded:

24. The history surrounding the Sunnyside property including the transfer of the Sunnyside property to [Junior] in 1973 supports the creation of a constructive trust. There was never a transfer of ownership of the Sunnyside property from [Senior] to [Junior]. Ownership

11

> of the Sunnyside property remained with [Senior] until the time of his death. The constructive trust was created for the benefit of Alan. No ownership interest transferred to [Junior].

¶28     There is ample evidence in the record to support the District Court's findings. Undoubtedly, Junior would be enriched, to the extent of $80,000, if he were to receive the proceeds from the sale of the Sunnyside residence. Further, for the reasons articulated above by the District Court, we conclude that this enrichment would have been unjust. Therefore, we hold that the District Court did not err when it imposed a constructive trust upon the proceeds of the Sunnyside residence.

¶29 Junior challenges the District Court's findings and conclusions regarding the validity of the post-1973 conveyances. However, the District Court premised its ultimate ruling on the finding and imposition of a constructive trust which resulted from the 1973 transaction. As we have held that the District Court correctly imposed a constructive trust in regard to the 1973 transaction, we need not examine Junior's arguments as they pertain to the subsequent conveyances.

ISSUE 3

¶30 **Did the District Court err when it awarded attorney fees to Respondents Patricia Raunig and Helen Ricci?**

¶31 A district court's grant or denial of a motion for attorney fees is a discretionary ruling which we review to determine whether the court abused its discretion. *Braach v. Graybeal*, 1999 MT 234, ¶ 6, 296 Mont. 138, ¶ 6, 988 P.2d 761, ¶ 6.

12

¶32 Although somewhat difficult to ascertain, it appears that Junior raises two issues with regard to the award of attorney fees. First, Junior argues that "the trial court had no basis to award attorney fees . . . and this Court should reverse that order in its entirety." Second, assuming that we affirm the award of attorney fees, Junior contends that the District Court erroneously failed to hold a hearing to determine the appropriate extent of the award. Therefore, we will address each argument in turn.

¶33 In response to Respondents' motion for attorney fees and costs and Junior's respective opposition, the District Court, on November 28, 2000, found the following:

> 22. Attorney fees and costs were incurred by the sisters in part due to [Junior's] deception, contradiction, and fraud. [Junior's] deceptive and fraudulent behavior, as well as his contradictory statements are identified throughout the text of these Findings and Conclusions. As a result of [Junior's] deception, contradiction and fraudulent behavior considerable time, effort and expense have been spent in an attempt to arrive at a reasonable understanding of the condition of the guardianship estate and of the true ownership of the Sunnyside property.
>
> 23. The record reflects that [Junior] and his counsel have taken every opportunity to obstruct and avoid a resolution of the issues in this case by filing at best questionable motions to dismiss and for sanctions as well as taking positions that are not supported by law or facts and failing to mediate the issues in good faith. By doing so, [Junior] and his counsel have needlessly protracted this litigation at considerable expense to the sisters.

Based on the above findings, the District Court ordered Junior to pay eighty percent of Respondents' attorney fees and costs and Junior's attorney to pay the remaining twenty percent.

13

¶34    In *In re Support of K.F.* (1988), 232 Mont. 326, 331, 756 P.2d 460, 463, we reaffirmed the proposition that a district court has the equitable power to order attorney fees when justice so requires. Further, § 37-61-421, MCA, authorizes a district court to award attorney fees, costs, and expenses against "[a]n attorney or party . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously . . . ." *See also In re Marriage of Rager* (1994), 263 Mont. 361, 366, 868 P.2d 625, 628. As there is substantial evidence in the record to support the above findings, we conclude that the District Court did not abuse its discretion in awarding attorney fees and costs to Respondents. Therefore, we must next determine whether the actual monetary award was reasonable.

¶35  In its November 28, 2000 ruling, the District Court ordered counsel for Respondents to "submit his bill for attorney fees and costs to the Court with a supporting affidavit for review and approval by the Court." Consequently, on February 27, 2001, Respondents' counsel submitted the requested bill and corresponding affidavit. On March 20, 2001, the District Court approved Respondents' alleged fees and costs. In the months that followed, Junior's attorney remitted his twenty percent share of the fees and costs in full satisfaction of his obligation.

¶36  On appeal, Junior insinuates that the bill of fees and costs contained expenses for which he should not be held responsible. Junior argues that the District Court should have held a hearing following submission of the bill instead of "simply rubber-

14

stamp[ing] the affidavit of counsel for respondents . . . ." In support of his position, Junior cites *Lindey's, Inc. v. Goodover* (1994), 264 Mont. 489, 872 P.2d 767, for the proposition that due process requires notice and a hearing before attorney fees may be awarded.

¶37 Junior's reliance on *Lindey's* is misplaced. In *Lindey's*, we held that a hearing is necessary to provide a party a sufficient opportunity to defend against the imposition of Rule 11, M.R.Civ.P., sanctions. *Lindey's*, 264 Mont. at 497, 872 P.2d at 772. Here the District Court did not rely on Rule 11, M.R.Civ.P., for its award of attorney fees and costs. Moreover, Junior was on notice that fees would be awarded, and had an opportunity to challenge the amount.

¶38 Junior filed a brief in opposition to Respondents' request for an award of fees. Thus, he was heard by the Court with respect to the propriety of a fee award. Subsequently, Respondents submitted a bill of expenses together with supporting affidavit. At this point, Junior had the opportunity to be heard with respect to the amount of the requested fees and expenses. However, in the three weeks following the submission of the affidavit and bill of expenses, Junior filed no objections to the bill of expenses. The District Court was therefore justified in entering an order approving the bill of expenses as submitted.

¶39 Not only did Junior fail to object to the bill of expenses, his attorney appeared to acquiesce in the order when he remitted his twenty percent of the award in due course. Now, on appeal,

15

Junior asks us to overturn the District Court's award. It is well settled that we will not address an issue on appeal that a party did not properly raise in the district court. *Nason v. Leistiko*, 1998 MT 217, ¶ 11, 290 Mont. 460, ¶ 11, 963 P.2d 1279, ¶ 11. As stated above, Junior did not raise an objection to the alleged fees and costs following Respondents' submission of the same. Instead Junior challenges the fees and costs for the first time on appeal. Therefore, we decline to address the reasonableness of the award.

¶40 Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Terry N. Trieweiler dissenting.

¶41 I dissent from the majority Opinion. The findings, conclusions and order of the District Court are so riddled with procedural irregularity and substantive inconsistency that I reluctantly conclude that the order must be reversed.

¶42 First, there was no procedural basis for the District Court's sua sponte consolidation of the proceeding for an accounting in Alan J. McDermott's guardianship and a contest to the distribution of property in Leo E. McDermott, Sr.'s, estate. As noted in the majority Opinion, Rule 42(a), M.R.Civ.P., permits consolidation of actions involving a common question of law or fact. There were neither legal nor factual issues common to these two cases.

¶43 In the guardianship action, Alan's sisters sought an accounting from Leo McDermott, Jr., of how he handled assets which had been entrusted to him as Alan's conservator. Those assets were clearly limited to the principal and interest remaining in Alan's estate following deposit in that estate of his personal injury settlement and the expenditures that were made on Alan's behalf from that principal and interest.

¶44 The probate proceedings involved Leo McDermott, Jr.'s, challenge to the distribution of the proceeds from the sale of the Sunnyside residence. Leo, Jr., contended that he owned the residence following the transfer to him by Leo, Sr., in 1973. His sister, the personal representative of the estate, contended that it was transferred from Leo, Jr., back to Leo, Sr., in 1986 and then transferred by a third conveyance from Leo, Sr., to himself

17

and three of his children and then finally devised to three of his children, including Leo, Jr., by his last will and testament. None of the issues in the probate proceeding are factually or legally related to what Leo, Jr., did with the personal injury proceeds entrusted to him as Alan's conservator.

¶45 The two separate and independent proceedings were simply consolidated by the District Court to facilitate the District Court's arbitrary satisfaction of the claim that Leo, Jr., breached his fiduciary duty to his brother Alan. However, there was neither statutory nor common law authority for doing so. Nor is any cited in the majority Opinion.

¶46 Closer examination of the District Court's decision on the merits also reveals highly irregular findings and conclusions unsupported by any legal theory of which I am aware. First, the District Court sets forth extensive evidence which seems to lead to the inevitable finding that Leo, Jr., did in fact transfer title to the Sunnyside property back to Leo, Sr., in 1986. The District Court ultimately states in its findings that, "[b]ased upon the record herein, the Court believes that Jr. is attempting to fraudulently acquire exclusive ownership of the Sunnyside property." I would, therefore, infer from the District Court's findings that Leo, Jr., transferred the Sunnyside property back to Leo, Sr., in 1986. If that is the case, then Leo, Sr., owned the Sunnyside property when, in 1991, he executed a will which devised it to four of his children including Leo, Jr. He also owned the property when, in 1992, he executed the deed which retained a life estate for himself and conveyed a future interest to three of his

18

children, including Leo, Jr. If those are the facts, then what authority did the District Court have to transfer the entire proceeds from the sale of the Sunnyside property to Alan's conservatorship estate as a sanction for Leo, Jr.'s, breach of his fiduciary duty to manage that estate for Alan's best interest? At most, Leo, Jr., had a 33_% interest and the proceeds from the sale of the home.

¶47 Furthermore, the District Court did not simply find that the 1973 transaction established a constructive trust for the benefit of Alan and then order that the proceeds from the Sunnyside residence be deposited in Alan's guardianship account, as suggested in the majority Opinion. Instead, the District Court inexplicably concluded that because a constructive trust had been created:

> There was never a transfer of ownership of the Sunnyside property from Sr. to Jr. Ownership of the Sunnyside property remained with Leo Sr. until the time of his death. The constructive trust was created for the benefit of Alan. No ownership interest transferred to Leo Jr.

¶48 The District Court's analysis of legal ownership following the 1973 transaction is a legal impossibility. If the property was transferred in trust for Alan, title was still transferred to Leo, Jr., as the trustee. If Leo, Sr., retained the title as the District Court concluded, then there was no trust for Alan, Leo, Sr., did not transfer any title, and the property passed by conveyance in the 1992 transaction. Either way, there was simply not $80,000 of proceeds from the sale of the Sunnyside residence to arbitrarily transfer to Alan's conservatorship account.

19

¶49 Finally, there was no authority for the District Court to confiscate any of Leo, Jr.'s, property and arbitrarily transfer it to Alan. The remedy for breach of a fiduciary duty is a suit for the damage resulting from that breach and entry of a judgment for the amount of damage proven. Here, there was no separate suit for breach of fiduciary duty. There was an accounting action in which Leo, Jr.'s, sisters also sought their substitution as conservator of Alan's estate and there was a probate proceeding in which title to certain property was disputed. To simply combine these two independent and separate proceedings and then fashion an "equitable" remedy by grabbing some property here and moving it there is the height of arbitrariness and disregard for rules of procedure and substantive law. However, all concern for law seems to have been lost in the District Court's and the majority's revulsion at what they assume was Leo, Jr.'s, irresponsible administration of Alan's money. If what happened in this case is acceptable, then this Court has removed any restrictions on the motion of an "equitable remedy."

¶50 For these reasons, I dissent from the majority Opinion.

/S/ TERRY N. TRIEWEILER

20