
DA 07-0061

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 17

JAMES M. WALTERS and DIANE M. WALTERS,

     Plaintiffs and Appellee,

  v.

LARRY LULOFF, JANET PERKINS LULOFF,
PHYLLIS WEBSTER and THE BROKERS
A REAL ESTATE CO., P.C.,

     Defendants and Appellants.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 03-57
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        W. Scott Green, Patten, Peterman, Bekkedahl & Green, Billings, Montana

    For Appellee:

        Kathryn S. Syth, LaRance & Syth, Billings, Montana

               Submitted on Briefs:  November 21, 2007

                   Decided:  January 28, 2008

Filed:

                  _____

                           Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Larry Luloff and Janet Perkins Luloff (collectively, Luloffs) appeal from an order of the Twenty-Second Judicial District Court, Carbon County, granting James M. Walters's and Diane M. Walters's motion for summary judgment. The Luloffs also appeal the District Court's determination of damages and award of attorney fees to the Walters. We affirm in part, vacate the award of attorney fees, and remand for further proceedings.

¶2 We review the following issues on appeal:

¶3 *Did the District Court err in granting the Walters' motion for summary judgment?*

¶4 *Did the District Court commit an abuse of discretion in its determination of damages?*

¶5 *Did the District Court commit an abuse of discretion when it awarded attorney fees to the Walters?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶6 The Stormitt Butte Subdivision sits just south of Boyd, Montana, in Carbon County. The Luloffs owned the subdivision. James M. Walters (Jim) and Diane M. Walters (collectively, Walters) entered into a buy-sell agreement on May 11, 2000, to purchase Lot Six of the Stormitt Butte Subdivision from the Luloffs.

¶7 The Luloffs' real estate agent informed the Walters that the well on Lot Six produces two and one-half gallons of water per minute. The Luloffs' agent provided a well log report (Well Log One) to the Walters at the signing of the buy-sell agreement. Well Log One indicated that the well runs 801 feet deep. Well Log One denoted the well's production as two and one-half gallons of water per minute.

¶8 The Walters, the Luloffs, and the Luloffs' real estate agent met to close the sale of Lot Six on June 2, 2000. The Luloffs assured the Walters that the well produces clear drinking

2

water. Jim Walters inquired again concerning Well Log One and the well's production. Larry Luloff asserted that Well Log One accurately reflected both the well's depth and the well's production. Larry Luloff asserted that the well produces two and one-half gallons of water per minute. The Walters received an additional copy of Well Log One and the parties closed the sale.

¶9 The Walters purchased Lot Six from the Luloffs for $41,824 under a contract for deed. The contract for deed included a provision requiring the Walters to keep the property free of liens and encumbrances, an acceleration clause, and an attorney fee provision.

¶10 The Walters built a home on the property and had a pump placed in the well. The pump initially failed to work. The pump ultimately produced a limited amount of dirty water and would run dry after approximately thirty minutes. The Walters refused to pay for the pump, and the installation company filed a construction lien against the property. The Luloffs then declared a default of the contract for deed and demanded the purchase price under the acceleration clause. The Walters refinanced in order to avoid forfeiture of Lot Six.

¶11 The Walters contacted Mike Keele (Keele), an employee of Aqua Drilling, Inc., regarding the well on Lot Six. Keele had assisted in drilling the well on Lot Six. Keele informed the Walters that, according to his company records, the well produces only half of a gallon of water per minute.

¶12 Keele accompanied Jim Walters to Lot Six to examine the well in the fall of 2001. Larry Luloff arrived at the site. Luloff gave Walters another well log report (Well Log Two). Well Log Two indicated that the well on Lot Six produces one and one-half gallons of water per minute. Well Log One and Well Log Two bear the same date and signature.

3

The reports appear identical except for the different figure denoting the well's rate of production.

¶13 Keele examined Well Log Two and informed the Walters that it incorrectly recorded the well's production rate. Keele stated that someone "obviously" had "altered" the report. Keele then examined Well Log One and confirmed that it too incorrectly denoted the well's production rate. Keele advised the Walters to examine the well log information on file with the Montana Bureau of Mines and Geology Ground Water Information Center (Bureau of Mines and Geology). Information on file with the Bureau of Mines and Geology confirms that the well on Lot Six produces only half of a gallon of water per minute. The well's limited production forced the Walters to install a cistern system on Lot Six. The Walters had to haul water to the cistern in order to service their home.

¶14 The Walters filed suit against the Luloffs and their real estate agent on June 27, 2003. The Luloffs declined to obtain counsel and filed an answer *pro se*. The Luloffs filed numerous motions and documents with the District Court, including an affidavit submitted on September 16, 2003. The Luloffs assert in the affidavit that they did not convey any information to the Walters concerning Lot Six's well "prior to June 2, 2000, which was the date of the closing on the lot." The Luloffs also provided an answer to the Walters' discovery request. The Luloffs' answer provides: "My knowledge is that the well was drilled to 800 feet, filled back to 400 feet and cased to that depth. The volume of water at that time was 700 gallons per day . . . ."

¶15 The Walters filed a motion for summary judgment on March 13, 2006. The court held a hearing on the motion on June 20, 2006, after postponing the hearing at the Luloffs'

request. The Luloffs failed to appear at the hearing. The District Court granted the Walters'

motion for summary judgment on the issue of liability on July 18, 2006.

¶16     The District Court held a hearing on damages on November 13, 2006. The Luloffs

appeared *pro se* at the hearing. The Luloffs obtained counsel for the first time in this matter

on November 29, 2006. The District Court determined the amount of damages and awarded

the Walters attorney fees in its Findings of Fact, Conclusions of Law, and Order entered on

January 11, 2007. The Luloffs appeal the District Court's grant of summary judgment, its

determination of damages, and the award of attorney fees to the Walters.

## STANDARD OF REVIEW

¶17     We review *de novo* a district court's decision to grant summary judgment, using the

criteria applied by the district court under M. R. Civ. P. 56. *Farmers Cooperative Assoc. v.*

*Amsden, LLC*, 2007 MT 286, ¶ 24, 339 Mont. 445, ¶ 24, 171 P.3d 690, ¶ 24. A district court

properly grants a motion for summary judgment when no genuine issue of material fact

exists and the moving party is entitled to judgment as a matter of law. *Farmers Cooperative*,

¶ 24. We review a district court's determination of damages and award of attorney fees for

abuse of discretion. *Weimar v. Lyons*, 2007 MT 182, ¶ 17, 338 Mont. 242, ¶ 17, 164 P.3d

922, ¶ 17; *Rosenthal v. County of Madison*, 2007 MT 277, ¶ 23, 339 Mont. 419, ¶ 23, 170

P.3d 493, ¶ 23.

## DISCUSSION

### ISSUE ONE

¶18     *Did the District Court err in granting the Walters' motion for summary judgment?*

¶19 The Luloffs argue that the District Court improperly granted summary judgment by default. The Luloffs further contend that the affidavit filed with the court on September 16, 2003, raised a genuine issue of material fact that precluded the grant of summary judgment. The Luloffs also argue for the first time on appeal that the Walters' original complaint alleged only actual fraud. This court generally will not address an issue that a party did not raise before the district court. *Owens v. Montana Dept. of Revenue*, 2007 MT 298, ¶ 2, 340 Mont. 48, ¶ 2, ___ P.3d ___, ¶ 2. Accordingly, we address only those issues that the Luloffs properly preserved for appeal.

¶20 A party seeking summary judgment must provide the court with evidence that demonstrates the absence of genuine issues of material fact. *Bradley v. Crow Tribe of Indians*, 2005 MT 309, ¶ 13, 329 Mont. 448, ¶ 13, 124 P.3d 1143, ¶ 13. We look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence of genuine issues of material fact. *Bradley*, ¶ 12. The burden shifts to the non-moving party to demonstrate that a genuine issue of material fact exists. *Bradley*, ¶ 14. The non-moving party has an affirmative obligation to respond by affidavits or other sworn testimony to raise genuine issues of fact. *HKM Assoc. v. Northwest Pipe Fittings*, 272 Mont. 187, 193, 900 P.2d 302, 305-06 (1995). A district court may not grant summary judgment against a party, however, simply "because they did not respond to the motion, or did not show up at the hearing." *Bradley*, ¶ 26.

¶21 A court properly grants a motion for summary judgment on a claim for negligent misrepresentation when the record affirmatively establishes (1) that the defendant made a false representation as to a past or existing material fact without any reasonable ground for

6

believing it to be true, regardless of his or her actual belief, with the intent to induce the plaintiff's reliance; and (2) that the plaintiff, unaware of the falsity of the representation, justifiably relied on the representation and suffered damage as a result of that reliance. *Cechovic v. Hardin & Associates, Inc.*, 273 Mont. 104, 112, 902 P.2d 520, 525 (1995).

¶22     The Walters filed documentary evidence and an affidavit in support of their motion for summary judgment. The Walters established that they inquired about the quantity of the water produced by Lot Six's well on numerous occasions, and that they specifically inquired about the well's production at the closing of the sale. The Walters established that Larry Luloff responded at the closing that the well produces two and one-half gallons of water per minute. The Walters demonstrated this statement's falsity through Keele's affidavit, the report from the Bureau of Mines and Geology, and a second well report provided by Larry Luloff that denoted the well's production at only one and one-half gallons of water per minute.

¶23     The Luloffs' response to discovery states that Larry Luloff knew at the closing that the well produced "700 gallons" of water per day. This discovery response reveals that Larry Luloff did not have reasonable grounds to believe his assertion at closing that the well produces two and one-half gallons of water per minute, or 3,600 gallons per day.

¶24     A buyer justifiably relies on a seller's representations concerning a property's water supply. *See Parkhill v. Fuselier*, 194 Mont. 415, 419, 632 P.2d 1132, 1135 (1981). The Walters justifiably relied on the Luloffs' representations concerning Lot Six's well and its water production. The Walters verified that they suffered harm as a result of relying on the Luloffs' representations.

7

¶25    The District Court found that the Walters had satisfied their initial burden under summary judgment. The Luloffs, on the other hand, failed to submit any response to the motion for summary judgment. Indeed, the Luloffs failed to attend the hearing on summary judgment. The District Court's order cites the Luloffs' failure to respond as constituting a failure to satisfy the then-shifted burden under summary judgment. The District Court did not grant summary judgment by default.

¶26    The Luloffs assert, nonetheless, that the affidavit that they had submitted two and one-half years earlier raised a genuine issue of material fact. The affidavit states that the Luloffs had no contact or communication with the Walters before the closing of the sale of Lot Six.

¶27    The Walters' motion for summary judgment faulted the Luloffs for statements made at the closing of the sale of the property. The Luloffs' affidavit does not raise a genuine issue of fact with regard to the alleged statements made at closing. The District Court properly determined that the Luloffs had failed to demonstrate the existence of a genuine issue of fact. We conclude that the District Court properly granted the Walters' motion for summary judgment.

**ISSUE TWO**

¶28    *Did the District Court commit an abuse of discretion in its determination of damages?*

¶29    The Luloffs argue for the first time on appeal that the District Court failed to apportion the damages between the Luloffs and their real estate agent. We decline to address the issue of apportionment in light of the Luloffs' failure to raise it in the District Court. *Owens*, ¶ 2.

8

¶30 With respect to the amount of damages, we note that a plaintiff is entitled to those losses incurred in justifiable reliance upon a defendant's negligent misrepresentations. *Bokma Farms, Inc. v. State*, 2000 MT 298, ¶ 11, 302 Mont. 321, ¶ 11, 14 P.3d 1199, ¶ 11. The District Court concluded that the Walters established the absence of any genuine fact issue relative to a claim of negligent misrepresentation against the Luloffs. The District Court assessed the damages in light of the Walters' reliance on the Luloffs' misrepresentations. The District Court's determination of damages did not constitute an abuse of discretion based on the record before us.

## ISSUE THREE

¶31 *Did the District Court commit an abuse of discretion when it awarded attorney fees to the Walters?*

¶32 The Luloffs argue that the District Court improperly awarded attorney fees to the Walters. The Luloffs point out that the Walters did not allege a claim for attorney fees in their complaint. The Luloffs contend that the Walters failed to assert a contract based claim and cannot recover attorney fees on a claim for negligent misrepresentation - - the sole claim on which the Walters prevailed.

¶33 We generally prohibit a party from recovering attorney fees absent a specific contractual provision or statutory grant. *Cechovic*, 273 Mont. at 123, 902 P.2d at 532. We have held, however, that a district court has the equitable power to award attorney fees when justice so requires. *In re Estate of McDermott*, 2002 MT 164, ¶ 34, 310 Mont. 435, ¶ 34, 51 P.3d 486, ¶ 34. We quoted in *McDermott* the court's account of the actions of the penalized

9

party, who took " 'every opportunity to obstruct and avoid a resolution of the issues . . .' " and held " 'positions that are not supported by law or facts . . . .' " *McDermott*, ¶ 33.  We further noted in *McDermott* that § 37-61-421, MCA, authorizes a district court to award attorney fees when a party " 'multiplies the proceedings in any case unreasonably and vexatiously . . . .' " *McDermott*, ¶ 34.

¶34    The District Court awarded attorney fees pursuant to a provision in the contract for deed, and alternatively on the basis that "justice so requires."  We note, however, that neither the Walters' complaint nor their motion for summary judgment asserts a contract claim.  The District Court also failed to explain why justice required the award of attorney fees to the Walters.    The District Court maintains the best perspective for determining the reasonableness of the Luloffs' actions.  Accordingly, we vacate the award of attorney fees. We remand to the District Court for the sole purpose of determining whether an award of attorney fees to the Walters remains appropriate on the basis that "justice so requires."

¶35    Affirmed in part, vacated in part, and remanded.


/S/ BRIAN MORRIS


We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE