FILED

April 21 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0291

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 137

ROBERT L. MONROE, individually and as personal
representative of the Estate of Josephine Marsden,
and LEATHA M. CANCELOSI,

      Plaintiffs and Appellees,

  v.

MELISSA MICHELLE MARSDEN a/k/a MELISSA
MICHELLE WORLEY and JOHN JACE WORLEY,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-04-616
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Richard R. Buley; Tipp & Buley, Missoula, Montana

      For Appellees:

          Richard A. Reep; Reep & Bell, Missoula, Montana

              Submitted on Briefs:  March 18, 2009

                    Decided:  April 21, 2009

Filed:

          _____
                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Melissa Michelle Marsden, a/k/a Melissa Michelle Worley and John Jace Worley, defendants below, appeal from the judgment against them entered by the District Court of the Fourth Judicial District, Missoula County, the Hon. Douglas G. Harkin presiding. We affirm.

¶2     The Worleys present the following issues for review:

¶3     Issue One: Whether the District Court erred in finding that the Worleys exercised undue influence over Josephine Marsden.

¶4     Issue Two: Whether the District Court erred in imposing a constructive trust on certain parcels of real property, in favor of the Estate of Josephine Marsden.

¶5     Issue Three: Whether the District Court erred in finding that the Worleys converted the property of Josephine Marsden.

¶6     Issue Four: Whether the District Court erred in awarding damages against the Worleys and in favor of the Estate of Josephine Marsden.

¶7     Issue Five: Whether the District Court erred in awarding attorney fees and costs to Robert Monroe and Leatha Cancelosi.

## PROCEDURAL AND FACTUAL BACKGROUND

¶8     Josephine Marsden was the mother of Robert Monroe, Leatha Cancelosi, Melissa Marsden (Worley) and Jody Connell. Jody was not a party to this litigation. Josephine died at the age of 84 on June 5, 2004, after several years of steadily declining health.

¶9    In October and again in November, 1999, Josephine was hospitalized as a result of numerous serious health impairments including diabetes, hypertension, acute renal failure, digestive disorder and depression. Upon her discharge from the hospital she could no longer care for herself and live alone in her own home. Her four children met and Melissa offered that she, her husband John, and her daughter could move into Josephine's home and care for her. The siblings did not discuss whether Melissa should be compensated for caring for Josephine. Melissa did not expect to get paid for her services and offered her help because Josephine had taken care of her and it was her turn to repay her mother. Josephine's physical and mental health declined steadily until her death and she was bedridden and confined to her bedroom for the last year and a half of her life.

¶10    Up until the time Melissa and John moved into Josephine's house, they had lived for some time rent free in another house owned by Josephine. Melissa had worked part time at a casino and the highest gross yearly income she could recall was just over $10,000. She only sporadically filed income tax returns. John did occasional construction jobs and worked on cars, and had never filed an income tax return in his life. Neither of them had a checking account, credit card or any material assets.

¶11    Throughout her life Josephine Marsden was frugal and independent, took great care in her financial transactions and was a meticulous record-keeper. At the time of her 1999 hospitalizations she owned several pieces of unencumbered real estate; including her home, the house that Melissa was living in, land near Ovando and land in Florida. She had monthly income from Social Security, a pension and an annuity that typically

exceeded her monthly expenses by several thousand dollars. In 1999 the balance in her checking account was over $17,000 and her medical expenses were covered by Medicare and a private supplemental policy. Josephine kept collections of stamps, silver dollars and dolls in her house, and had varying amounts of cash on hand in an envelope, often running into the thousands of dollars.

¶12 When Melissa moved in to care for her mother in late 1999 or early 2000, she also assumed all control over her mother's financial affairs. She controlled Josephine's checking account, her mail and payment of bills and expenses. By the time of Josephine's death in 2004, Melissa had obtained title to all of Josephine's real property; had sold the Ovando and Florida land; had encumbered the remaining property with over $175,000 in loans taken out in Josephine's name; and had used part of the loan proceeds to buy property in Missoula and Las Vegas. The Las Vegas property was a condominium unit that John bought from his family. Melissa had exhausted all the cash in Josephine's house and had repeatedly overdrawn Josephine's checking account. Melissa had fraudulently cashed one of Josephine's certificates of deposit, established for the designated benefit of her children and grandchildren, by forging Josephine's name to it. She attempted to cash a second of Josephine's certificates of deposit by forging her signature but was stopped by the credit union. Melissa and John obtained and used credit cards in Josephine's name and charged the account to the credit limit of $9,000. They exhausted all of Josephine's savings, social security, retirement and annuity income. Melissa and John retained for their own use all rental income from Josephine's two rental units and never accounted for it. They destroyed years of Josephine's financial

4

records and kept very few records of Josephine's financial affairs after Melissa assumed control. Melissa fabricated lease documents and forged signatures on them to obtain loans in Josephine's name. Melissa lied about the lease forgeries and other forgeries at the trial in District Court.

¶13 After moving to Josephine's home, Melissa used Josephine's money to pay all of her and John's personal bills and obligations, and in doing so repeatedly overdrew Josephine's checking account. Melissa made no attempt to separate Josephine's bills and expenses from those incurred by her family and has never provided any accounting of the expenditures of Josephine's income and assets.

¶14 Melissa undertook the real estate transactions involving Josephine's property and assets during Josephine's deteriorating illnesses. Melissa obtained control over Josephine's assets without ever telling her siblings and all the transactions benefitted only Melissa and John. Shortly after their mother died, the siblings met and asked Melissa about a will and about the assets of Josephine's estate. Robert knew that he had been designated the personal representative of the estate by his mother's will. Melissa told them that Josephine's residence was now hers, that the land near Ovando had been given to a conservation organization, that there were no other assets, and that there was no will. She refused to provide any other information or to answer questions. Further attempts by Robert and Leatha to obtain information from Melissa were fruitless.

¶15 Robert obtained Josephine's will from the attorney who prepared it. The will left to Melissa the rental property that she had lived in before moving in with Josephine. The

remainder of her assets were left equally to Robert, Leatha and Melissa. There was no distribution to Josephine's daughter Jody.

¶16 Robert and Leatha commenced this action to recover assets of Josephine's estate from Melissa and John. The District Court heard several days of testimony from numerous witnesses and on December 14, 2007, entered Findings of Fact, Conclusions of Law and Order. The District Court found that there was a confidential relationship between Melissa and Josephine based on Josephine's trust of Melissa and Melissa's control over all aspects of Josephine's finances. The District Court found that Melissa was an agent and fiduciary as to Josephine, owing her the duty of loyalty, prudence and utmost good faith that required her to account for the use of Josephine's funds and property. The District Court found that Melissa had failed to account for Josephine's funds and property, had breached her fiduciary duties and had committed constructive and actual fraud.

¶17 The District Court concluded that Melissa and John had exercised undue influence over Josephine and by so doing had obtained control and ownership of Josephine's real estate, loan proceeds, rental income, social security and retirement benefits and savings. The District Court found that this transfer of all of Josephine's assets to Melissa and John was at odds with Josephine's desires for the transfer of her estate as set out in her will and that the purported transfer of all the assets to Melissa was unnatural.

¶18 The District Court imposed a constructive trust in favor of Josephine's estate on all the real property that Melissa and John had obtained from Josephine or that they had purchased with loan proceeds obtained in Josephine's name. Those properties were

6

Josephine's home, two rental units in Missoula and a condominium in Las Vegas. The District Court also entered a money judgment against Melissa and John for the $177,000 in proceeds they obtained by taking loans in Josephine's name; for all rental income not accounted for; and other items, totaling nearly $400,000. The court further awarded Robert and Leatha their costs and attorney fees based on Melissa's extraordinary efforts to conceal her use of Josephine's assets and the substantial effort that Robert and Leatha had to expend to uncover the truth.

¶19 Melissa and John appeal.

## STANDARD OF REVIEW

¶20 The standard of review of a district court's findings of fact is whether they are clearly erroneous, and the standard of review of conclusions of law is whether the interpretation of the law is correct. *In the Matter of the Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, 24 P.3d 211. The evidence is reviewed in the light most favorable to the prevailing party, and the credibility of witnesses and the weight assigned to their testimony are for the determination of the trial court. *In the Matter of the Guardianship of Mowrer*, 1999 MT 73, ¶ 36, 294 Mont. 35, 979 P.2d 156.

## DISCUSSION

¶21 *Issue one: Whether the District Court erred in finding that the Worleys exercised undue influence over Josephine Marsden.* Undue influence is:

> (1) the use by one in whom a confidence is reposed by another and who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining unfair advantage over him;
> (2) taking an unfair advantage of another's weakness of mind; or
> (3) taking a grossly oppressive and unfair advantage of another's

7

necessities or distress.

Section 28-2-407, MCA. A court determining whether there has been undue influence may consider relevant factors including (1) any confidential relationship between the donor and the person allegedly exercising influence; (2) the physical condition of the donor as relevant to his ability to withstand influence; (3) the mental condition of the donor as relevant to his ability to withstand influence; (4) the unnaturalness of the disposition, as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and (5) the demands and importunities as they affect the donor, considering the relevant circumstances. *In the Matter of the Estate of Harms*, 2006 MT 320, ¶ 21, 335 Mont. 66, 149 P.3d 557. These factors are not exclusive or mandatory, but are available to guide a court in applying the statute, which controls. *Estate of Bradshaw*, ¶ 16.

¶22 The District Court entered detailed and specific findings and conclusions in this case that illustrate the confidential relationship between Melissa and Josephine and how that relationship allowed Melissa to manipulate Josephine and her finances. Josephine was seriously ill the entire time Melissa cared for her, steadily declining to the condition of a bed-ridden invalid. Josephine was totally dependent upon Melissa for her care. Josephine developed short term memory loss, and became increasingly inactive, depressed and withdrawn. She refused or resisted most medical care.

¶23 Josephine and her children trusted Melissa with control of Josephine and her finances. Melissa repeatedly acted as Josephine's agent in financial and real estate transactions and controlled all aspects of her finances and assets. By the time of her

8

death, Josephine was in a state of total helplessness and her mental state was fragile and feeble. Her doctor testified that she had lost short term memory, likely had suffered a stroke, had become progressively more isolated from others, had lost all interest in her former hobbies, and demonstrated a desire to die.

¶24 While Josephine became steadily more withdrawn, depressed and uninterested, Melissa took complete control. She deposited all funds that came to Josephine, paid all bills, and initiated and negotiated loans on Josephine's real estate, forging documents and signatures as required. Despite the number and significance of the real estate and financial transactions that Melissa entered on Josephine's behalf, Melissa never sought power of attorney, appointment as conservator, advice of counsel, or advice or consent of any of Josephine's other children. She never disclosed these transactions to anyone except to the extent that she has been forced to do so since the initiation of this litigation.

¶25 The disposition of Josephine's assets was unnatural in the context of her known desire, expressed in her will that was executed prior to her 1999 hospitalizations. That will appointed Robert as her personal representative and left the bulk of her estate equally to Robert, Leatha and Melissa. Melissa and John's use of Josephine's assets to support a lifestyle they had never previously enjoyed, and their incurring long-term debt in Josephine's name were completely inconsistent with the way Josephine had lived her entire life.

¶26 There was ample evidence, demonstrated in the District Court's detailed findings of fact that are not clearly erroneous, that Melissa and John exercised undue influence over Josephine, as defined in § 28-2-407, MCA.

9

¶27 *Issue two: Whether the District Court erred in imposing a constructive trust on certain parcels of real property, in favor of the estate of Josephine Marsden.* The District Court imposed a constructive trust in favor of Josephine's estate on Josephine's house (that had been transferred to Melissa); on Josephine's former rental property (that had been transferred to Melissa); on another rental property, and on the condo in Las Vegas. The latter two properties had been purchased by Melissa and John with funds obtained from fraudulent loans obtained in Josephine's name.

¶28 "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." Section 72-33-219, MCA; *Estate of Bradshaw*, ¶ 36. A constructive trust may be imposed with or without proof of fraud or other wrongful acts. *In the Matter of the Estate of McDermott*, 2002 MT 164, ¶ 25, 310 Mont. 435, 51 P.3d 486. Establishment of a constructive trust depends only upon a showing that the title holder would be unjustly enriched if permitted to retain title. *In the Matter of the Marriage of Moss*, 1999 MT 62, ¶ 29, 293 Mont. 500, 977 P.2d 322.

¶29 In this case there were ample reasons for the District Court to impose the constructive trusts. It is clear from the facts discussed above that Melissa and John obtained the properties through undue influence, depriving Melissa's siblings of their devises under the will. Melissa and John would have been unjustly enriched if allowed to retain title to the real property and a constructive trust was a proper remedy.

¶30 *Issue three: Whether the District Court erred in finding that the Worleys converted the property of Josephine Marsden.* Melissa and John make a brief and

10

conclusory argument that the District Court incorrectly found that they had converted Josephine's property to themselves. The basis of this argument is that Melissa and Josephine were both signatories on a checking account, and so both were equal owners, precluding conversion.

¶31 Whatever the merit of that argument, it means nothing here in light of their "plundering of Josephine's property," as it was described by the District Court. Melissa and John took much more than just the contents of the checking account. The District Court's reference to conversion was in its conclusions of law, prefatory to imposing the constructive trust with regard to the parcels of real property. It did not deal with the checking account. Melissa and John make no substantial argument on this point and there was ample ground for finding conversion.

¶32 *Issue Four: Whether the District Court erred in awarding damages against the Worleys and in favor of the Estate of Josephine Marsden*. The District Court found that Melissa and John, in the span of their four or so years caring for Josephine, had looted and dissipated what should have been, under proper care, an estate worth about $500,000. The real property that could be reached (the Ovando and Florida properties had been sold, with the proceeds going to Melissa and John) was materially indebted. Josephine's positive cash flow, which should under proper care have accumulated value at the rate of several thousand dollars a month for over four years was nowhere to be found.

¶33 The District Court's decision to award damages was based on substantial evidence.

11

¶34 *Issue Five: Whether the District Court erred in awarding attorney fees and costs to Robert Monroe and Leatha Cancelosi.* The District Court awarded costs and attorney fees to Robert and Leatha based "upon the extraordinary efforts by Melissa to conceal her use of Josephine's property and money, which has required Robert and Leatha to make substantial efforts to uncover and prove Melissa's wrongful conduct . . . ."

¶35 A party can ordinarily recover attorney fees in an action only if empowered to do so by contract or statute. *Walters v. Luloff*, 2008 MT 17, ¶ 33, 341 Mont. 158, 176 P.3d 1034. However, a district court has equitable power to award attorney fees when justice requires. *Walters*, ¶ 33; *Estate of McDermott*, ¶ 34. In this case there is ample evidence that Melissa went to great lengths to hide her transactions from her siblings, who were the people directly impacted. She destroyed records and forged documents and signatures. The District Court found that Melissa and John had a history of "not leaving a financial paper trail" and failing to file tax returns to avoid John's child support obligations from another state. Melissa consistently refused to provide information to her siblings as to what had happened to their mother's estate and lied to them about what had happened to the Ovando property. Melissa continued to obviously lie even at the trial in District Court. Melissa, during her testimony, testified that a lease for one of Josephine's properties was genuine and had been signed by the tenant, but upon questioning had to acknowledge that was not true and that the entire document was a forgery and a "lie." Judge Harkin characterized her as a "blatant liar" who had hurt her own case "really, really bad."

¶36 Robert and Leatha were confronted with the decision to either walk away with nothing from their mother's estate, or hire counsel and engage in the long and expensive process of discovering and righting the wrongs perpetrated by Melissa. They chose the latter course and have prevailed. Again, Melissa and John provide only a conclusory three-sentence argument on attorney fees and provide no substantial argument or authority as to why the decision should be reversed. The District Court was within its equitable powers to award attorney fees and costs in this case.

¶37 For the reasons stated above, the District Court is affirmed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON