No. 96-255

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STEVE FILLINGER and RHONDA FILLINGER,
STEVE FILLINGER OUTFITTER & GUIDE
SERVICE, INC., a/k/a STEVEN FILLINGER
OUTFITTERS, INC., a/k/a STEVE FILLINGER
OUTFITTERS, a/k/a FILLINGER OUTFITTERS,

Plaintiffs, Respondents and Cross Appellants,

v.

NORTHWESTERN AGENCY, INC., OF GREAT FALLS,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles R. Johnson and Kirk D. Evenson; Marra, Wenz,
Johnson & Hopkins; Great Falls, Montana

For Respondents:

Robert B. Pfennigs and Jack L. Lewis; Jardine, Stephenson,
Blewett & Weaver; Great Falls, Montana

Submitted on Briefs: April 17, 1997

Decided:   June 3, 1997

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

Northwestern Agency, Inc., hereinafter "Northwestern," appeals from the judgment and jury verdict of the Eighth Judicial District Court, Cascade County. The Respondents, collectively referred to herein as the "Fillingers," filed a cross-appeal but have elected only to respond to the issues raised by Northwestern and do not pursue their cross-appeal. The Fillingers filed a complaint against Northwestern seeking to recover alleged economic losses incurred as a consequence of Northwestern's procurement of an insurance policy which did not afford the coverage allegedly requested by the Fillingers, and which coverage they believed Northwestern had procured for them. Western Heritage, the insurer, was originally joined as a defendant in this action, but settled with the Fillingers prior to trial. The Fillingers dropped their separate individual claims. The case was submitted to the jury on a Special Verdict with eighteen questions pertaining to five separate legal theories including: negligent failure to procure the insurance coverage requested; negligent failure to inform the Fillingers that the requested coverage was not procured; negligent misrepresentation; breach of oral contract; and breach of 33-18-201, MCA, et. seq. The jury returned a verdict which found Northwestern liable on all five theories and assessed $125,000 in damages. We affirm.

The issues on appeal are:

1. Did the District Court err in instructing the jury that an insurance policyholder has no duty to read the policy unless under the circumstances it is unreasonable not to read it?

2. Did the District Court err by allowing evidence of the oral negotiations between the Fillingers and Northwestern regarding their agreement to procure a specified insurance coverage?

3. Did the District Court err in failing to instruct the jury on the applicable law in regard to the necessity of expert testimony to establish the standard of care of an insurance agent in a negligence action by a client for failure to procure the coverage requested by the client?

4. Did the District Court err in submitting the Fillingers' claim to the jury under an Unfair Trade Practices Act theory, specifically 33-18-201(1), MCA, as it applied to Northwestern?

FACTUAL BACKGROUND

The Fillingers own and operate a guide and outfitting business near Stockett,

Montana. From 1983 to 1994, with the exception of one year, the Fillingers contracted with Burlington Northern Railroad ("BN") to provide outfitting services, including guided hunting and floating trips, for customers and employees of BN. During the negotiations for the contract, the BN representative made it clear that a prerequisite for the Fillingers being awarded the contract was that they obtain insurance which would cover the outfitting business for any accident, including an accident involving a horse. Steve Fillinger, therefore, contacted Joyce Jenkins, the president of Northwestern, concerning his insurance requirements. An insurance policy was procured by Jenkins and renewed annually by the Fillingers.

In November 1989, during a hunting trip sponsored by BN and guided by the Fillingers, a BN employee, Mike O'Shaughnessy, was injured in a horse-related accident. The medical expenses were submitted by the Fillingers to Northwestern; however, the payment of the medical expenses was not immediately rendered. On July 25, 1990, prior to a planned BN float trip, BN held a meeting with Steve Fillinger and Jenkins to discuss the O'Shaughnessy claim. BN was placated by the outcome of the meeting and did not cancel its float trip with the Fillingers.

In 1991, the O'Shaughnessy claim still had not been paid, inducing BN to cancel its 1991 contract with the Fillingers. In 1992, BN and the Fillingers renewed their contract negotiations. A new contract was agreed upon which reduced the amount BN would pay to the Fillingers for outfitting services. The new contract also eliminated the use of horses and required only "liability insurance as required by the State of Montana for outfitters."

At trial, the parties presented conflicting factual accounts surrounding the procurement of the policy, the representations made by Jenkins, and the coverage the policy entailed. Steve Fillinger testified he told Jenkins he "needed insurance that would cover everything, especially if anybody got hurt on a horse." Jenkins procured an insurance policy for the Fillingers. Steve testified that she assured him that the policy would cover anything that happens, especially on a horse. Steve explained that he did not read the policies word for word, but confirmed with Jenkins that the policies contained the coverage he had requested. Steve testified Jenkins represented that a specific clause in the policy covered his concerns regarding the horses and referred to this clause as the "horse rider." Steve stated that he looked through the policy each year to see if the "horse rider" clause was attached because that was where BN's concerns seemed to be focused.

In 1991, the Fillingers continued to use Jenkins to procure their insurance, even though BN was not one of their clients that year. Without BN as a client, Steve no

longer needed the special insurance coverage and all he requested from Jenkins was a "regular outfitter's policy." Jenkins maintained throughout the trial that this regular outfitter's policy was all that Steve ever requested. Steve testified, however, that Jenkins explained to him in 1991 for the first time that she could not provide the type of policy he had previously requested which would cover any accident, and that his current insurance policy was only a liability policy which provides coverage only for negligent acts. During the trial, Steve asserted that if Jenkins had informed him of this fact earlier there would have been a number of options available to the Fillingers to satisfy BN's insurance concerns, including elimination of the risk itself by discontinuing the use of horses.

At trial, the Fillingers sought recovery of damages for the concessions made for the 1992 contract which were allegedly necessary in order to get BN back as a client and for the loss of income during 1991 in which year BN did not renew its contract with the Fillingers. The jury found Northwestern liable on all five theories and assessed $125,000 in damages. Northwestern appeals.

ISSUE 1

Did the District Court err in instructing the jury that an insurance policyholder has no duty to read the policy unless under the circumstances it is unreasonable not to read it?

It is well within the district court's discretion to decide how to instruct a jury, taking into account theories of contending parties, and this Court will not overturn the district court except for abuse of discretion. Hall v. Big Sky Lumber & Supply, Inc. (1993), 261 Mont. 328, 863 P.2d 389; Cline v. Durden (1990), 246 Mont. 154, 803 P.2d 1077. In Hall, we explained that on review by this Court

all jury instructions must be read as a whole and the party assigning error to the court's instructions must show prejudice in order to prevail. Walden v. State (1991), 250 Mont. 132, 818 P.2d 1190. Such prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. Walden, 250 Mont. at 137, 818 P.2d at 1193.

Hall, 863 P.2d at 392.

Northwestern argues that the District Court erred in giving its Instruction No. 24 which provides:

In connection with your deliberations as to whether any reliance on Joyce Jenkins was justified, I instruct you that, an insurance policyholder has no duty to read the policy unless under the circumstances it is unreasonable not to read it.

Nor does it mean that an officer or employee of Fillinger Outfitters had a duty to read the policy every time a new policy was issued.

You should, therefore, consider whether the officers and employees of Fillinger Outfitters acted reasonably in relying upon any representations made by Joyce Jenkins or any other officer or employee of Northwestern Agency rather than reading the policy. This will depend upon the Plaintiff's relationship with Joyce Jenkins and the officers and employees of Northwestern Agency and the nature of the situation. You should consider whether the representations of Joyce Jenkins, as an insurance agent and given her expertise, as well as the representations of the other Northwestern Agency officers and employees, naturally tended to induce Fillinger Outfitters to reasonably believe that reading the policy would be superfluous.

(Emphasis added.) This instruction was derived essentially verbatim from Fiorentino v. Travelers Ins. Co. (E.D. Pa. 1978), 448 F. Supp. 1364. The court in Fiorentino held that this instruction accurately reflected Pennsylvania law on the subject of negligent misrepresentation and therefore determined that the lower court was correct in giving such instruction.

The issue which Northwestern raises in regard to Instruction No. 24 is whether an insured has an absolute duty to read their insurance policy. This Court has not previously addressed the issue of whether an insured has an absolute duty to read their insurance policy.

Northwestern asserts that the line of authority, including Fiorentino, which holds that an insured does not have an absolute duty to read their policy, but rather only a duty to act reasonably under the circumstances, is not good law nor is it the majority view on this subject. Northwestern urges this Court to adopt a rule holding that because an insured has entered into a contract he or she has an obligation to read and understand all of the policy's terms notwithstanding any reasonable reliance on assurances by the agent who procured the insurance policy.

This Court has previously stated that an insurance policy is a contract subject to the applicable contract law of Montana. Universal Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co. (1975), 166 Mont. 128, 135, 531 P.2d 668, 673. We have acknowledged that one who executes a written contract is presumed to know its contents and assent to them. Johnson v. Estate of Shelton (1988), 232 Mont. 85, 89-90, 754 P.2d 828, 830. Instruction No. 24, however, does not provide absolute relief for an insurance policyholder from the obligation to read their insurance policy, it merely provides

that
the extent of the obligation depends upon what is reasonable under the facts and circumstances of each case.

To properly consider the issue of what is an insured's duty to read their insurance contract, the relationship of the parties must be considered. In an insurance coverage dispute there are typically two types of relationships. First, there is the relationship between the parties to the contract, i.e., the insured and the insurer; and second, there is the relationship between the insured and the agent. The relationship we are concerned with here is that between the insured, the Fillingers, and their agent, Jenkins/Northwestern. In order to prevail on their claim, the Fillingers were required to prove that their agent negligently performed her duty to procure a specified policy.

Under similar circumstances involving the relationship between the insured and their agent, several jurisdictions have held that while the insured's failure to read the policy may amount to contributory negligence, it does not operate as a bar to relief as a matter of law. Fiorentino (Dist. Pa. 1978), 448 F. Supp. 1364; Floral Consultants, Ltd. v. Hanover Ins. Co. (Ill. 1984), 470 N.E.2d 527; Kirk v. R. Stanford Web Agency, Inc. (N.C. App. 1985), 330 S.E.2d 262; Martini v. Beaverton Ins. Agency, Inc. (Or. 1992), 838 P.2d 1061, 1067. We are persuaded by the reasoning of this line of authority that an insured does not have an absolute duty to read their policy, but their failure to do so may amount to contributory negligence.

The Oregon Supreme Court succinctly explained its adoption of this view in Martini by explaining that:

Insureds and insurance policies are not all alike. Insureds range from unsophisticated individuals who know nothing about insurance, to experienced business persons knowledgeable about insurance, to large corporations with batteries of lawyers. The relevant provisions of the policy may be simple (the address of the insured premises, for example) or complex. A jury should be allowed to consider two questions: Under the relevant circumstances, was it unreasonable in the light of foreseeable risks for the insured not to read the policy? If so, did the insured's unreasonable failure to read the policy contribute to the insured's damages?

Martini, 838 P.2d at 1067. The court in Fiorentino explained how the reliance upon one's agent affects the duty to read:

When the insured informs the agent of his insurance needs and the agent's conduct permits a reasonable inference that he was highly skilled in this area, the insured's reliance on the agent to obtain the coverage that he has represented that he will obtain is justifiable. The insured does not have an absolute duty to read the policy, but rather only the duty to act reasonably under the circumstances. The circumstances vary with the facts

of each case, and depend on the relationship between the agent and the insured.

Fiorentino, 448 F. Supp. at 1369.

We agree with this line of reasoning as it applies to the facts before us.  We note that the jury was properly instructed regarding the law that the failure to act reasonably can amount to contributory negligence.  Therefore, we view the issue raised as not being whether the insureds had an absolute duty to read the policy, but rather was there evidence from which the jury could have found that, in the circumstances of this case, it was not unreasonable for the insureds not to read the policy and whether the insureds acted reasonably in relying upon any representations made by their agent.

We review a jury's verdict to determine whether there is substantial credible evidence in the record to support it.  Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 422, 913 P.2d 641, 646; Barthule v. Karman (1994), 268 Mont. 477, 485, 886 P.2d 971, 976.  In Tanner, we further defined this standard of review by explaining that:

Substantial evidence is defined as that evidence that a reasonable mind might accept as adequate to support a conclusion.  Head v. Central Reserve Life (1993), 256 Mont. 188, 201, 845 P.2d 735, 743.  Evidence which is inherently weak and conflicting may still be considered substantial.  Head, 845 P.2d at 743.  When conflicting evidence exists, the weight and credibility given to it are within the province of the jury.  Whiting v. State (1991), 248 Mont. 207, 213, 810 P.2d 1177, 1181.  When determining if substantial evidence exists, this Court views the evidence in the light most favorable to the prevailing party.  Whiting, 810 P.2d at 1181.

Tanner, 275 Mont. at 422, 913 P.2d at 646.

At trial, Steve Fillinger testified that he asked Jenkins to procure a policy which would cover everything, especially if anyone was hurt on a horse.  He then testified that Jenkins answered affirmatively when he asked her if the policy she procured covered anything that happens, especially on horses.  Steve also testified that in each of the following years after the original policy was procured he confirmed with Jenkins that the policy contained the requested coverage.  Jenkins and a former office manager testified that Steve frequently called to ask about coverage and was concerned about being covered properly and covered for any accidents while using horses.  Furthermore, Steve testified that Jenkins represented that one specific page of the policy was a "horse rider" and provided the coverage he had requested.  Steve checked the policy each year to ensure that it contained this rider.  After the accident by BN employee, Mike O'Shaughnessy, while on a horse, Jenkins told Steve that there was no problem with the claim and that the bills would be paid.

Thus, after having reviewed this testimony and the further testimony and evidence introduced at trial we conclude that there is substantial credible evidence in the record to support the jury's verdict on the issue of negligent misrepresentation. We will not overturn the jury's decision on this issue as it is within their realm of duties to determine the weight and credibility to be given to evidence presented at trial.

ISSUE 2

Did the District Court err by allowing evidence of the oral negotiations between the Fillingers and Northwestern regarding their agreement to procure a specified insurance coverage?

Northwestern asserts that the District Court erred when it denied its motion for summary judgment, or in the alternative, motion in limine, regarding the exclusion of all extrinsic evidence of oral negotiations between the Fillingers and Northwestern prior to the Fillingers purchasing their insurance policy from Western Heritage. Northwestern argues that the parol evidence rule bars all evidence of these oral negotiations because it is a privy and not a stranger to the written contract between the Fillingers and Western Heritage. The Fillingers contend that this Court must reject Northwestern's assertion that the parol evidence rule applies to the oral negotiations, as Northwestern is a stranger to the written contract.

This Court reviews the district court's evidentiary rulings to determine whether there has been an abuse of discretion. Cartwright v. Equitable Life Assur. (1996), 276 Mont. 1, 19, 914 P.2d 976, 987.

Northwestern contends that the parol evidence rule is applicable because the oral negotiations resulted in a written contract between the Fillingers and Western Heritage to which Northwestern is a privy, and not a stranger. This Court has examined the application of the parol evidence rule in a dispute involving both a party or its privy and a stranger to the written contract. In Read v. Lewis & Clark County (1919), 55 Mont. 412, 178 P. 177, we held that:

In a controversy between parties to a written contract or their privies, parol evidence cannot be introduced to vary, enlarge or contradict its terms, except when a mistake or imperfection therein is put in issue by the pleadings or when the validity of the contract is the fact in dispute. (Rev. Codes sec. 7873.) In a controversy between a party to the contract and a stranger, however, the rule does not apply. As against him, a party may assert that the agreement was other or different in any respect from that which the writing expresses.

Read, 178 P. at 180. This rule was restated in In re Perry's Estate (1948), 121 Mont.

280, 318-19, 192 P.2d 532, 551 (Gibson, J., dissenting):
But even if it might be said to add to the writing or to vary its terms, it is
to be remembered that the rule, that the terms of a written contract cannot
be altered or contradicted by parol evidence, cannot be invoked either by
or against a stranger to a contract and it is not applicable in a controversy
between a party to the contract on the one hand and a stranger to it on the
other.  Nissen v. Sabin, 202 Iowa 1362, 212 N.W. 125, 50 A.L.R. 1216.
And our statute provides that the parol evidence rule is only applicable
'between the parties and their representatives, or successors in interest.'
Sec. 10517, Rev. Codes 1935; Greening v. Gazette Printing Co., 108
Mont. 158, 88 P.2d 862.

Neither this Court nor the Legislature have chosen to depart from this rule and its
application to admission of parol evidence, and we agree, along with a majority of
jurisdictions, that it is still good law today.  See, e.g., Silvicraft, Inc. v.
Southeast Timber
Co. (Ark. App. 1991), 805 S.W.2d 84, 87; Neeves v. Potter (Colo. 1989), 769 P.2d
1047; Smith v. Conn (Iowa 1968), 163 N.W.2d 407; Denha v. Jacob (Mich. App. 1989),
446 N.W.2d 303; Carolina Cas. Ins. Co. v. Oregon Auto. Ins. Co. (Or. 1965), 408 P.2d
198; Marr Scaffolding Co. v. Fairground Forms, Inc. (R.I. 1996), 682 A.2d 455, 459;
First Sec. Federal Sav. Bank v. McQuilken (Va. 1997), 480 S.E.2d 485, 487.
        Northwestern argues that as a sales agency it is in privity with Western
Heritage
and it fits the definition of a "privie" as set out in Read, 178 P. 177.  Therefore,
Northwestern submits that the parol evidence rule applies to bar the oral
conversations
between Northwestern and the Fillingers.  Northwestern argues that this Court has
previously concluded in Sherrod, Inc. v. Morrison-Knudsen Co. (1991), 249 Mont. 282,
815 P.2d 1135, that an independent third-party representative can be a privy to a
written
contract and that in Sherrod we held the parol evidence rule applied to a privy to
the
written contract.
        In Sherrod, the dispute involved the amount of material which was to be removed
from a construction site.  Sherrod, as a subcontractor, entered into a written
contract with
COP Construction. COP Construction, in turn, entered into a written contract with the
general contractor, Morrison-Knudsen.  At trial, Sherrod attempted to introduce
evidence
that a Morrison-Knudsen representative made fraudulent statements to him regarding
the
amount of excavation to be performed upon which he relied when he submitted his bid
to remove the material.  This bid was accepted and a written contract was entered
into.
The written contract provided in its terms that Sherrod had, "by examination,
satisfied
himself as to the . . . character, quantity and kind of materials to be
encountered."
Sherrod, 815 P.2d at 1137.  We held that any reliance on the alleged fraudulent
statement
of the Morrison-Knudsen representative was directly contradicted by the terms of the
written agreement which superseded all previous oral agreements, and that therefore

the parol evidence rule prohibited admission of any evidence of the oral statements made by the Morrison-Knudsen representative. In Sherrod, this Court did not state that the representative was a privy to the contract nor did we address the issue of whether misrepresentations were made by a stranger to the contract. We do not view Sherrod to be dispositive of the issue of whether one is a privy to a written contract which is the basis of Northwestern's contentions.

In applying the rule as set forth in Read, we determine that Northwestern is not a privy to the written contract between Western Heritage and the Fillingers. Northwestern did not have a direct agency contract with Western Heritage. It had no binding authority from Western Heritage. Northwestern did not receive any commission from Western Heritage for procuring the insurance contract for the Fillingers. Furthermore, Northwestern did not have a written contract with the Fillingers. Thus, we fail to see any privity between Northwestern and the parties to the contract which would remove Northwestern from its role as a stranger to the written contract. Therefore, under this rule, the Fillingers may use parol evidence against Northwestern, as a stranger to the contract, to assert that the agreement was other or different in any respect from that which the writing expressed.

We hold that the District Court did not abuse its discretion by allowing the evidence of the oral negotiations, including the representations made by Northwestern, regarding the insurance contract as purchased by the Fillingers.

ISSUE 3

Did the District Court err in failing to instruct the jury on the applicable law in regard to the necessity of expert testimony to establish the standard of care of an insurance agent in a negligence action by a client for failure to procure the coverage requested by the client?

Again, we have held that a district court has discretion regarding the instructions it gives or refuses to give to a jury and that we will not reverse a district court on the basis of its instructions absent an abuse of discretion. Cartwright v. Equitable Life Assur. (1996), 276 Mont. 1, 26, 914 P.2d 976, 992; Cechovic v. Hardin & Assoc. (1995), 273 Mont. 104, 116, 902 P.2d 520, 527. When we examine whether jury instructions were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions given and the evidence at trial. Story v. City of Bozeman (1993), 259 Mont. 207, 222, 856 P.2d 202, 211.

Northwestern asserts that the District Court erred in instructing the jury because

the Fillingers are pursuing a professional negligence claim and therefore they must have
provided expert testimony as to the standard of care, duty of care, and breach of that duty
by the insurance agent.  This Court has previously addressed the legal standard of care
for insurance agents with respect to insurance procurement.  In Gay v. Lavina State Bank
(1921), 61 Mont. 449, 202 P. 753, we explained:

[A]s between the insured and his own agent or broker authorized by him to
procure insurance there is the usual obligation on the part of the latter to
carry out the instructions given him and faithfully discharge the trust
reposed in him, and he may become liable in damages for breach of duty.
If he is instructed to procure specific insurance and fails to do so, he is
liable to his principal for the damage suffered by reason of the want of such
insurance.

Gay, 202 P. at 755, followed in Lee v. Andrews (1983), 204 Mont. 527, 667 P.2d 919.

     Jenkins herself testified as an insurance agent to what the duties and responsibilities
are of an insurance agent when asked to procure specific insurance coverage.  No
additional independent expert testimony is required to establish the standard of care.

     Although we have not specifically addressed this issue, it is clear to this Court that
the determination of whether an insurance agent reasonably fulfilled his or her duty and
procured the coverage requested is easily within the common experience and knowledge
of lay jurors.  No expert testimony is required as there are no technical insurance issues
beyond the understanding of the trier of fact.  See, e.g., Shahrokhfar v. State Farm Mut.
Auto. Ins. Co. (1981), 194 Mont. 76, 634 P.2d 653 (holding that the question whether
the actions of an insurance agent and his attorney were negligent was well within the
realm of knowledge of a layperson); Salt Lake City School Dist. v. Galbraith & Green,
Inc. (Utah App. 1987), 740 P.2d 284 (applying the majority rule that "expert testimony
is not required in matters involving insurance agents and brokers unless technical
insurance issues beyond the understanding of the average trier of fact are involved").

     We have reached a similar conclusion in Durbin v. Ross (1996), 276 Mont. 463,
916 P.2d 758, where we held that "expert testimony . . . [is] not required to establish a
duty and a breach of that duty in [a] . . . negligent misrepresentation claim."  Durbin,
916 at 765.  In Durbin we held:

     A determination of whether the Realtors made a representation and
whether that representation was false is clearly within the common
knowledge of a layperson.  In the instant case, scientific, technical, or other
specialized knowledge is not necessary to assist the jury to understand the
evidence because the statute and the regulations establish the conduct to

which the Realtors must conform regardless of whether other brokers conform to that same conduct. Accordingly, we conclude that the Durbins were not required to provide expert standard of care testimony to establish the relevant statutory violations.

Durbin, 916 P.2d at 766. Unlike Durbin, there are no statutes or regulations which establish the conduct to which an insurance agent must conform when requested to procure specific insurance. Regardless of this minor distinction, we have already addressed that issue in Gay, 202 P. at 755, where we stated that if the agent is "instructed to procure specific insurance and fails to do so, he is liable."

Therefore, we hold that in the context of an insurance agent's alleged failure to procure requested coverage, expert testimony is not required as the issue is not one which involves technical insurance issues outside the common experience and knowledge of lay jurors. The jury determined that Jenkins, through Northwestern, did make negligent representations and breached her duty to procure specific insurance coverage when she failed to procure the coverage requested by Steve Fillinger. This Court will not substitute its judgment for that of the trier of fact with regard to weighing the evidence and determining the credibility of the witnesses. Wunderlich v. Lumbermens Mut. Cas. Co. (1995), 270 Mont. 404, 408, 892 P.2d 563, 566. Thus, the District Court did not abuse its discretion in its instructions to the jury on the issue of expert testimony in a negligence action against an insurance agent.

ISSUE 4

Did the District Court err in submitting the Fillingers' claim to the jury under an Unfair Trade Practices Act theory, specifically 33-18-201(1), MCA, as it applied to Northwestern?

As we previously stated, this Court reviews discretionary trial court rulings, such as the giving of jury instructions, to determine whether the trial court abused its discretion. Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 916 P.2d 122; Hislop v. Cady (1993), 261 Mont. 243, 862 P.2d 388.

Northwestern asserts the District Court committed reversible error by instructing the jury that Northwestern, as a sales agency with no claims-handling authority, was subject to the provisions of the Unfair Trade Practices Act. The District Court's Instruction No. 33 stated in part:

You are instructed that Fillinger Outfitters also claims that Northwestern Agency violated 33-18-201(1) of the Montana Code Annotated. This statute, among other things, provides that no person may, with such frequency as to indicate a general business practice, misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.

Northwestern contends that this is err, as this Court has not decided that 33-18-201, MCA, is applicable to an insurance agency.

The language of the Unfair Trade Practices Act aids in resolving this argument. Section 33-18-101, MCA, states that the purpose of the UTPA "is to regulate trade practices in the business of insurance." The Act further provides that "[n]o person shall engage . . . in any trade practice which is defined . . . to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Section 33-18-102, MCA. Furthermore, the Act does not exclude misrepresentations committed by an insurance agent in the sale of a policy. Section 33-18-201(1), MCA, provides specifically that "[n]o person may . . . (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue."

The Fillingers correctly assert that the actions of Northwestern and Jenkins fall squarely within these prohibited practices. In O'Fallon v. Farmers Ins. Exch. (1993), 260 Mont. 233, 859 P.2d 1008, we considered the individual liability of the claims adjustor assigned to handle the claim and concluded that:

[I]ndividuals, as well as insurers, are prohibited from engaging in the unfair trade practices set forth in 33-18-201, MCA, and that when an individual breaches the obligations imposed by that statute, the claimant who is damaged by that breach has a common law cause of action against that individual.

O'Fallon, 859 P.2d at 1015. Although O'Fallon specifically involved a claims adjustor and not an insurance agent or agency, we do not find this difference to be a true distinction.

It is clear that the relationship between Northwestern, as the insurance agent, and the Fillingers, as the client, involves the "business of insurance." The misrepresentations as to the extent of coverage under the Fillingers' policy, made by the individual insurance agent, Jenkins, through the insurance agency, Northwestern, are trade practices which are prohibited under 33-18-201, and -202, MCA. We therefore conclude that the District Court did not abuse its discretion in giving the jury its Instruction No. 33.

We affirm.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE
/S/ W. WILLIAM LEAPHART
/S/ WILLIAM E. HUNT, SR.
/S/ JAMES C. NELSON